**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CLAUDIO SAUCA ZAPATA,

Petitioner, 9:26-cv-01525 (BKS)

v.

TODD LYONS, in his official capacity as Acting Director of the Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; TODD BLANCHE, in his official capacity as Attorney General of the United States; PHILIP RHONEY, in his capacity as Acting Field Office Director, Buffalo Field Office, Immigration and Customs Enforcement,

Respondents.

---

**Appearances:**

*For Petitioner:*
Kathy Manley
Attorney at Law
26 Dinmore Road
Selkirk, New York 12158

*For Respondents:*
Alexis M. Osborne
Assistant United States Attorney
United States Attorney's Office
100 South Clinton Street
Syracuse, New York 13261

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On August 10, 2026, Petitioner Claudio Sauca Zapata, who had been arrested and detained by Immigration and Customs Enforcement ("ICE") earlier that day, filed an emergency

petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking immediate release, or, alternatively, a bond hearing. (Dkt. No. 1, ¶ 5). Petitioner claims his arrest and detention violate the Immigration and Nationality Act, 8 U.S.C. § 1226(a), his Fourth Amendment right to be free from unlawful stop and seizure, his Fifth Amendment right to due process, and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). (*Id.* ¶¶ 44–60).

That day the petition was filed, the Court issued an Order enjoining Respondents from moving Petitioner outside the jurisdiction of the Northern District of New York while this matter is pending[1] and setting a briefing schedule. (Dkt. No. 2). On October 8, 2026, after considering the parties' briefs, (Dkt. Nos. 1, 8, 9, 10), the Court granted the Petition, ordered Petitioner's immediate release, (*see* Dkt. No. 11),[2] and advised the parties that a written decision would follow. This is that decision.

## II. BACKGROUND

Petitioner, a citizen and national of Ecuador, entered the United States without admission or inspection in 2021.[3] (Dkt. No. 1, ¶ 16; Dkt. No. 8, at 1; Dkt. No. 8-1, at 2). Petitioner "was living in Albany, New York at the time of his detention." (Dkt. No. 1, ¶ 16).

Although the petition contains few facts, the Court gleans additional background facts from Respondents' submissions. On August 10, 2026, Immigration and Customs Enforcement ("ICE") Officers "were conducting enforcement operations" in Albany, where they were "attempting to locate a known ICE fugitive." (Dkt. No. 8-1, at 2). ICE officers observed an

---

[1] At Respondents' request and on their representation that transfer would not affect this Court's jurisdiction, the Court subsequently modified its order to allow Petitioner's transfer to the Buffalo Federal Detention Facility in Batavia, New York, which is located in Western District of New York. (Dkt. Nos. 4, 6).

[2] Petitioner was released the same day. (Dkt. No. 12).

[3] Petitioner states in the petition that he entered the U.S. in 2021, (Dkt. No. 1, ¶ 16); Respondents' documents indicate that Petitioner "entered the [U.S.] at an unknown place and on an unknown date." (Dkt. No. 8-1, at 2). Because it is undisputed that Petitioner had been in the U.S. for some time prior to his arrest, it is immaterial when Petitioner entered the U.S.

individual "who appeared to be [the] target exit" a "residence and enter a red Chevy van." (*Id.*). ICE officers initiated a vehicle stop and asked Petitioner[4] for identification. (*Id.*). Petitioner provided a New York State Drivers License and "freely stated that he did have a visa to be in the United States." (*Id.*). The ICE officers conducted "automated records checks to determine [Petitioner] had no legal status within the United States." (*Id.*). Petitioner "was arrested without incident" and transported "to the Malta [] sub office for processing." (*Id.*). Following his arrest, ICE officers served Petitioner with "an I-200" warrant for arrest. (*Id.*; Dkt. No. 8-2, at 1).

The next day, August 11, 2026, Petitioner received a Notice to Appear, initiating removal proceedings. (Dkt. No. 8-4, at 1). Petitioner also received a Form I-286 "Notice of Custody Determination" stating that he was "detained by the Department of Homeland Security" and allowing Petitioner to "request [that] an immigration judge review" the custody determination (Dkt. No. 8-3, at 1). The form is stamped "refused to sign." (*Id.*).

The "Record of Deportable/Inadmissible Alien" form dated August 14, 2026, states further records checks showed no criminal history. (Dkt. No. 8-1, at 3). Under "Disposition," the form states that Petitioner would "remain in the custody of the Service while pending [removal] proceedings." (*Id.*).

## III. JURISDICTION

"28 U.S.C. § 2241(c)(3) authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-cv-4189, 2018

[4] There is no claim that Petitioner was the "known ICE fugitive" that the ICE officers were allegedly targeting.

WL 2932726, at *6, 2018 U.S. Dist. LEXIS 98712, at *15 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## IV. DISCUSSION

### A. Statutory Basis for Detention

Respondents "acknowledge that, under the Second Circuit's decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), *petition for cert. granted*, No. 26-104 (U.S. Oct. 1, 2026), Petitioner's present detention is governed by 8 U.S.C. § 1226(a)."[5] (Dkt. No. 8, at 2). The Court agrees. Petitioner is a noncitizen who has been present in the United States since approximately 2021, thus he is not "seeking admission" into the country as that term is used in 8 U.S.C. § 1225(b)(2), which allows mandatory detention; instead, Petitioner's detention is governed by 8 U.S.C. § 1226(a), pursuant to which detention is discretionary. *See Barbosa da Cunha*, 175 F.4th at 73 ("Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission.").

### B. Due Process Required

The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property without due process of law." U.S. Const.

---

[5] The Courts of Appeals for the First, Third, Fourth, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuits have also determined that mandatory detention of similarly-situated petitioners under § 1225(b)(2)(A) is unlawful. *Guerrero Orellana v. Moniz*, 188 F.4th 1, 20 (1st Cir. 2026); *Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *7, 2026 U.S. App. LEXIS 26353, at *18 (3d Cir. Aug. 28, 2026); *Lopez Garcia v. Guadian*, No. 25-7044, 2026 WL 2661092, at *20, 2026 U.S. App. LEXIS 27850, at *16 (4th Cir. Sept. 10, 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 722 (6th Cir. 2026), *petition for cert. filed*, No. 25-1415 (U.S. June 22, 2026); *Cirrus Rojas v. Olson*, 183 F.4th 909, 914–15 (7th Cir. 2026); *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1250–51 (10th Cir. 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1262 (11th Cir. 2026). The Courts of Appeals for the Fifth and Eighth Circuits have held that § 1225(b)(2)(A) requires mandatory detention of individuals like Petitioner. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026), *petition for cert. filed*, No. 26-43 (U.S. July 2, 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026).

amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. The "essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72 (1951) (Frankfurter, J., concurring)).

Habeas review is available to challenge "the lawfulness of detention when it is first imposed" as well as "to challenge whether, at some point, an ongoing detention has become unlawful." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* at 850 (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)).

In evaluating procedural due process, courts apply the "three-factor balancing test as provided in *Mathews v. Eldridge*": "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews*, 424 U.S. at 335).

**1. Petitioner's Private Interest**

"[T]he private interest affected by the official action is the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851

(citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)), and it "cannot be abridged without 'adequate procedural protections,'" *Singh v. Maldonado*, No. 26-cv-00019, 2026 WL 233216, at *9, 2026 U.S. Dist. LEXIS 17311, at *27 (E.D.N.Y. Jan. 29, 2026) (quoting *Zadvydas*, 533 U.S. at 690). Petitioner, who, according to Respondents, has no criminal history, was detained from August 10, 2026 to October 8, 2026, pursuant to the INA's civil detention provisions, and not as a "result of a criminal adjudication." *Velasco Lopez*, 978 F.3d at 851; *see also Zadvydas*, 533 U.S. at 690 (referring to immigration proceedings as "civil, not criminal"). Nonetheless, Petitioner was first taken to Montgomery County Jail, and later transferred to the Buffalo Federal Detention Center, which is several hours from his residence in Albany and has been described as "not meaningfully different from at least a low-security penal institution for criminal detention," *Persaud v. Ball*, No. 26-cv-00841, 2026 WL 2069859, at *3, 2026 U.S. Dist. LEXIS 159088, at *8 (W.D.N.Y. July 17, 2026) (quoting *Wilson v. Barr*, No. 19-cv-01364, 2020 WL 13554798, at *7, 2020 U.S. Dist. LEXIS 266750, at *20 (W.D.N.Y. May 1, 2020)). The Court therefore finds the first *Mathews* factor weighs heavily in Petitioner's favor.

**2. Risk of Erroneous Deprivation and Probable Value of Additional Safeguards**

The second *Mathews* factor, "the risk of an erroneous deprivation of such [private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," also weighs in Petitioner's favor. *Black v. Decker*, 103 F.4th 133, 152 (2d Cir. 2024). "The only interest to be considered at this part of the *Mathews* analysis is that of the detained individuals—not the government." *Black*, 103 F.4th at 152.

Here, as discussed below, "the procedures underpinning" Petitioner's arrest and detention, as specified in § 1226(a) and its implementing regulations, do not appear to have been followed, thus increasing the risk of erroneous deprivation. *Velasco Lopez*, 978 F.3d at 852; *see*

*also id.* at 850 ("The 'necessary scope' of [due process] review and resulting relief 'in part depends upon the [procedural] rigor of any earlier proceedings.'" (quoting *Boumediene,* 553 U.S. at 781)); *see also Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 316 (E.D.N.Y. 2025) (finding that the "interest in being free from detention is significant even in the context of the Section 1226(a) discretionary scheme.").

Section 1226(a) provides that "[o]n a warrant issued by the Attorney General," a noncitizen "may be arrested and detained pending a decision on whether" the noncitizen "is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Curimilma Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889, at *5, 2026 U.S. Dist. LEXIS 114149, at *14 (E.D.N.Y. May 22, 2026) ("ICE must obtain a warrant before arresting a noncitizen unless the officer 'has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest.'" (quoting 8 U.S.C. § 1357(a)(2)). The regulations implementing § 1226(a) require an officer to make "an individualized determination as to whether detention is appropriate based on two factors—whether the noncitizen is (1) a 'danger to property or persons' and (2) is 'likely to appear for any future proceeding.'" *Rodriguez-Acurio*, 811 F. Supp. 3d at 316 (quoting 8 C.F.R. § 1236.1(c)(8)). "The noncitizen has an 'opportunity to appeal a detention decision' by the [] officer who conducted this individualized assessment 'to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors.'" *Id.* at 316–17 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025)).

In this case, ICE issued a warrant *after* Petitioner's arrest and prior to a Notice to Appear, which it issued the next day. (Dkt. No. 8-1, at 2; Dkt. No. 8-4, at 1); *see, e.g., Viner v. Maldonado,* No. 26-cv-4696, 2026 WL 2355437, at *2, 2026 U.S. Dist. LEXIS 182461, at *5

(E.D.N.Y. Aug. 14, 2026) (granting writ finding that "Respondents did not have a valid NTA in place at the time of Petitioner's arrest," and that ICE therefore had no authority to arrest the petitioner). Respondents, whose records state that Petitioner was arrested "without incident," do not claim any urgent circumstance justified Petitioner's warrantless arrest.[6] (Dkt. No. 8-1, at 2). Finally, and most importantly, Respondents do not claim, and there is no evidence, that ICE officials made an individualized custody determination before detaining Petitioner. *See*, *e.g.*, *id.* at 3 ("Disposition: Sauca will remain in the custody of the Service while pending [removal] proceedings."); *see also Lopez Benitez*, 795 F. Supp. 3d at 492–93 ("[B]efore the Government may exercise such discretion to detain a person, § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination."). Indeed, Petitioner was not committing a crime at the time of his arrest, did not attempt to flee or resist arrest in any manner, and has no criminal history.

Respondents assert that any deficiency could have been remedied if Petitioner had requested a bond hearing, which he was offered the day after his arrest, but that he declined the hearing. Respondents further assert that, at most, "any relief should be limited to a prompt, individualized bond hearing." (Dkt. No. 8, at 2). But "[t]he purpose of requiring an exercise of discretion [under Section 1226 (a)] prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty." *Lopez Benitez*, 795 F. Supp. 3d at 495; *see also Inestroza Carbajal v. Frazier*, No. 26-cv-2778, 2026 WL 1309265, at *3, 2026 U.S. Dist. LEXIS 104984, at *10 (E.D.N.Y. May 12, 2026) ("Without any notice or

[6] Although a warrantless arrest is permissible when ICE "'has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest,'" *Curimilma Quille v. Blanche*, No. 26-cv-2818, 2026 WL 1453889, at *5, 2026 U.S. Dist. LEXIS 114149, at *14 (E.D.N.Y. May 22, 2026) (quoting 8 U.S.C. § 1357(a)(2)), there is no evidence or allegation that Petitioner posed a flight risk.

opportunity to be heard, including an individualized assessment as to flight or public safety risk at the outset, an after-the-fact custody determination at an arbitrary point in time, after the deprivation has already occurred, violates due process."). The Court therefore finds a high risk of erroneous deprivation of Petitioner's liberty.

**3. Government's Interest**

Finally, the Court must consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. Although they refer to *Mathews* in their briefing, Respondents have not addressed any of the *Mathews* factors. (Dkt. No. 8, at 4). Thus, they have not identified any specific interest they seek to protect. In any event, it is well-established that "'the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose,'" and that "[t]he Government has interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (first quoting *Velasco Lopez*, 978 F.3d at 854; and then quoting *Zadvydas*, 533 U.S. at 690). "'[I]n striking the appropriate due process balance the final factor to be assessed is the public interest,'" which "include 'the administrative burden and other societal costs that would be associated with' the additional process." *Velasco Lopez*, 978 F.3d at 855 (quoting *Mathews*, 424 U.S. at 347).

Respondents attempt to differentiate this case, where Petitioner's arrest was his first encounter with ICE, from those involving re-detention of a noncitizen whom ICE previously released. (Dkt. No. 8, at 3). But absent evidence of an individualized determination regarding Petitioner's dangerousness or flight risk or any facts from which to infer an individualized determination, and absent evidence of any criminal history, the Court does not find the proposed

distinction especially helpful under the circumstances of this case. *See Crespo Tacuri v. Genalo*, No. 25-cv-06896, 2026 WL 35569, at *7, 2026 U.S. Dist. LEXIS 1766, at *20 (E.D.N.Y. Jan. 6, 2026) (granting release where the petitioner, who had no prior contact with immigration, was stopped by ICE officers who were searching for someone else, and summarily arrested and detained, explaining that "the government's interest in continued detention is slight insofar as petitioner was detained without an individualized custody determination that evaluated dangerousness and flight risk or any articulated change in circumstances"). Thus, the Court finds that because the Government's interest or rationale for detaining Petitioner without an individualized determination at the outset is minimal, and because the Petitioner's interest in his liberty and the risk of erroneous deprivation are great, Petitioner's right to procedural due process was violated and that release is the appropriate remedy in this case. *See Inestroza Carbajal*, 2026 WL 1309265, at *5, 2026 U.S. Dist. LEXIS 104984, at *14 (E.D.N.Y. May 12, 2026) (granting release after considering *Mathews* factors explaining that the "[r]espondents' change in legal position, post-hoc rationalizations, and attempts to remedy do not vitiate an arrest and detention that was illegal from its inception").[7]

## V. CONCLUSION

Accordingly, it is

**ORDERED** that the Petition for a writ of habeas corpus (Dkt. No. 1) is **GRANTED**; and it is further

**ORDERED** that pending the issuance of any final removal order against Petitioner, Respondents are also enjoined from denying him bond in any subsequent proceeding on the basis

[7] Because the Court has found Petitioner's detention violates his due process rights and has ordered his release, the Court need not reach the other claims in his petition.

that he must be detained pursuant to 8 U.S.C. § 1225(b), absent a change in relevant circumstances, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED** that the Clerk of the Court enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: October 28, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge